UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER PALMERO,<br><br>             Petitioner,<br><br>      v.<br><br>JIM ROBERTSON, Warden,<br><br>             Respondent. | No. 1:20-cv-00413-NONE-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was found guilty of possessing a sharp instrument in a penal institution. He filed the instant habeas action challenging the conviction. He claims there was insufficient evidence to support the conviction. As discussed below, the Court finds the claim to be without merit and recommends the petition be **DENIED.**

**I.      PROCEDURAL HISTORY**

On May 31, 2017, a Kern County jury found Petitioner guilty of possessing a weapon, specifically a sharp instrument, while in a penal institution in violation of Cal. Penal Code § 4502(A). (Doc. 24-4 at 127.[1]) On June 28, 2017, Petitioner was sentenced to a term of 8 years. (Doc. 24-4 at 142.)

---

[1] Citations are to ECF pagination.

1

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On September 27, 2018, the Fifth DCA affirmed the judgment. People v. Palmero, 2018 WL 4627706 (Cal. Ct. App. 2018). Petitioner filed a petition for review in the California Supreme Court. (Doc. 24-2.) Review was denied on December 12, 2018. (Doc. 24-3.)

On March 16, 2020, Petitioner filed the instant petition for writ of habeas corpus. (Doc. 1.) On September 24, 2020, the District Court dismissed Grounds Two and Three for failure to exhaust. (Doc. 21.) On November 19, 2020, Respondent filed an answer to the remaining claim. (Doc. 23.) On February 2, 2021, Petitioner filed a traverse. (Doc. 29.)

## II.     FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

*The Prosecution Case*

The prosecution evidence established that on December 7, 2015, Palmero was an inmate at North Kern State Prison. At approximately 9:35 a.m., that day, Correctional Sergeant Joshua Farley responded to a code 2 alarm, i.e., a request for additional staff at the Delta facility basketball courts. When he arrived, approximately 40 officers and other correctional staff were already there and had formed a "skirmish" line along the courts. Initially, all the inmates were lying on their stomachs, with the majority of them on the basketball courts. However, shortly after Farley arrived, approximately 20 to 25 inmates rushed the skirmish line and a code 3 alarm was called, which resulted in 35 to 40 more correctional officers and staff responding to the location.

Farley sprayed pepper spray on several of the inmates who rushed his section of the line, but after getting spray in his own eyes, he took cover behind another officer. The effect of the spray lasted approximately two and a half to three minutes. When Farley recovered his vision, the inmates were again lying prone on the ground and the correctional officers and staff began putting flex cuffs on them.

Once all the inmates in the yard were handcuffed, Farley had a chance to interact with Palmero, who was lying prone on a basketball court with eight to 10 other inmates near him. Next to Palmero was a shoe (the first shoe) that Palmero had been wearing and had been placed next to him after it was searched and checked for weapons. On the basketball court, 10 feet away from Palmero, lay a second shoe. One shoe was for the right foot and the other for the left foot. The shoes were the same size, the same state-issued style and brand (out of various brands that were available); and both shoes had similar tread wear on their innersoles. A piece of steel that had been sharpened to a point and was covered with a sheath was found tucked under the insole of the second shoe. Farley testified that the piece of steel was an inmate-manufactured stabbing weapon. He did not see any other inmates with only

---

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

one shoe that day. Several weapons were found in the exercise yard, including one in the shoe of another inmate.

*The Defense Case*

Derek Sommer was also an inmate at the prison on December 7, 2015. Sommer testified that during the disturbance he was on a grassy area next to the basketball courts. Sommer was carrying a piece of metal, that was shaved down to function as a knife, in a pocket he had sewn into his pants. When some inmates got up and rushed the correctional staff's skirmish line, Sommer got up, looked for a place to get rid of the manufactured weapon, and shoved it into a shoe he saw on the grass not too far from him. He then backed away as far as possible because the officers started firing rubber bullets. Sommer was serving a sentence of 140 years and was impeached with 16 felony convictions.

Palmero testified he did not possess a weapon on December 7, 2015. According to Palmero, he lost a shoe when he got up with the other inmates and charged the skirmish line. He did not pay attention to the shoe and left it behind. On cross-examination, Palmero testified he was "pretty sure" the second shoe was his and he denied telling Farley it was not. Palmero was impeached with three felony convictions.

*Rebuttal*

Correctional Sergeant Shaine Jensen testified that of the approximately 30 inmates that got up and rushed the skirmish line, none of them wore only one shoe during the 10-to 15-seconds before they got back down on the ground.

Officer Farley testified that Sommer was lying next to a blue jacket when the inmates first lay prone on the ground. An inmate-manufactured stabbing type weapon, wrapped in latex and housed in a sheath, was on top of the jacket. While Farley was discussing the weapon with other officers, Sommer looked at Farley and stated that the weapon belonged to him and that he did not want anyone else to get in trouble for the weapon he brought out to the yard. He also provided an accurate description of the weapon and the sheath. Farley further testified, that when he approached Palmero as he lay on the basketball court, prior to removing or exposing the weapon found in the second shoe, Farley jokingly stated, "Well, we know who this shoe belongs to." Palmero replied that it was not his shoe.

Palmero, 2018 WL 4627706, at *1-2.

## III. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern

3

1  County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. §
2  2254(a); 28 U.S.C.§ 2241(d).

3  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
4  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
5  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases
6  filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA
7  and is therefore governed by its provisions.

8  B.     Legal Standard of Review

9  A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless
10 the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision
11 that was contrary to, or involved an unreasonable application of, clearly established Federal law,
12 as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was
13 based on an unreasonable determination of the facts in light of the evidence presented in the State
14 court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);
15 Williams, 529 U.S. at 412-413.

16 A state court decision is "contrary to" clearly established federal law "if it applies a rule
17 that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set
18 of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a
19 different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-
20 406).

21 In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that
22 an "unreasonable application" of federal law is an objective test that turns on "whether it is
23 possible that fairminded jurists could disagree" that the state court decision meets the standards
24 set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable
25 application of federal law is different from an incorrect application of federal law.'"  Cullen v.
26 Pinholster, 563 U.S. 170, 203 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from
27 a federal court "must show that the state court's ruling on the claim being presented in federal
28 court was so lacking in justification that there was an error well understood and comprehended in

4

existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

    C.    Review of Petition

In his claim for relief, Petitioner alleges the evidence was insufficient to support the conviction, because the knife was not found in his possession and another inmate claimed the knife was his. Petitioner presented this claim on direct appeal in the state courts. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> ***The Sufficiency of the Evidence***
>
> Palmero contends the evidence is insufficient to sustain his conviction for possession of a sharp instrument by an inmate because he denied ownership of the second shoe and the evidence failed to establish that the second shoe belonged to

5

him or that he ever possessed it while knowing that it contained a weapon inside. We disagree.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] ... We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.'" (*People v. Covarrubias* (2016) 1 Cal.4th 838, 890.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Section 4502, subdivision (a), provides: "Every person who, while ... confined in any penal institution, ... possesses or carries upon his or her person or has under his or her custody or control any ... sharp instrument, ... is guilty of a felony[.]"

"To show a violation of this statute, the prosecution must prove the defendant was confined in a state prison and that he had knowledge of the prohibited object in his possession." (*People v. Strunk* (1995) 31 Cal.App.4th 265, 272.)

The evidence established that after the inmates were handcuffed on the exercise yard, a piece of steel with a sharp point was found hidden under the insole of the second shoe. Palmero testified that when he got up to rush the skirmish line he lost a shoe. He also admitted that he was fairly certain the second shoe belonged to him. Additionally, the first shoe and the second shoe were a matching pair and they had the same wear pattern on their inner soles. Further, the jury could have found from the testimony of Farley and Jensen that Palmero was the only inmate who was missing a shoe after the inmates were handcuffed. It could also reasonably infer from these circumstances that the second shoe belonged to Palmero and that Palmero possessed the weapon concealed in the shoe before the second shoe came off his foot sometime during the incident in the yard.

Moreover, before he was informed that the second shoe contained a weapon, Palmero denied to Farley that the shoe belonged to him. The jury could reasonably have found from the above evidence that Palmero falsely told Farley the second shoe did not belong to him because he knew the shoe contained a weapon inside. (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1102 ["It is well established that pretrial false statements by a defendant may be admitted to support an inference of consciousness of guilt by the defendant."].)

Although Palmero tried to show that Sommer could have placed the weapon in his shoe, the jury could have found from Farley's testimony that Sommer placed the weapon he brought out to the yard on the jacket found next to him. Thus, we conclude that substantial evidence supports Palmero's conviction for being an inmate in possession of a sharp instrument.

Palmero, 2018 WL 4627706, at *2-3.

1. **Legal Standard**

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

### 2. Analysis

In denying the claim, the state court applied the correct legal standard; therefore, the only question for this Court is whether that determination was unreasonable. Upon viewing the evidence in the light most favorable to the prosecution, it is clear that the state court's determination was not unreasonable.

The appellate court noted that there was sufficient evidence from which a jury could conclude that the shoe containing the knife was Petitioner's. In his traverse, Petitioner contends there was no circumstantial evidence indicating the knife belonged to him. (Doc. 29 at 2.) Petitioner's argument is unavailing, because there was substantial evidence that it was. At trial, Petitioner admitted the shoe belonged to him. The shoe was also a match for Petitioner's other shoe in size, make and wear. Petitioner nonetheless contends that the knife was not his, but that another inmate, Derek Sommer, had hidden the knife in his shoe during the incident. The jury disregarded Petitioner's and Sommer's testimony as not credible. Sommer was impeached with 16 felony convictions and admitted he was serving a sentence of 140 years. While Sommer testified at trial that he had hidden his knife in Petitioner's shoe, the jury could conclude from other evidence that Sommer's trial testimony was false. The appellate court noted that Sommer was located lying prone on the ground next to a blue jacket. On top of the blue jacket was an inmate-manufactured stabbing type weapon, wrapped in latex and housed in a sheath. Following the incident, Sommer advised officers that this knife was his, provided an accurate description of the weapon, and stated he didn't want anyone else to get in trouble for the weapon he brought to the yard. Also, upon locating the shoe on the yard, Officer Farley remarked, "Well, we know who this shoe belongs to." Petitioner replied that it was not his. From this contradictory statement, the jury could conclude that Petitioner knew his shoe contained a knife.

Given the totality of the evidence, Petitioner fails to show that no rational trier of fact would have agreed with the jury's determination. He fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, the Jackson standard. The claim should be denied.

In his traverse, Petitioner attempts to raise a new claim involving a violation of his Miranda rights. He claims that his statement denying ownership of the shoe in response to Officer Farley's remark that, "Well, we know who this shoe belongs to," violated his constitutional rights. First, a "[t]raverse is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Second, there was no Miranda violation. In Miranda v. Arizona, 384 U.S. 436, 469–73 (1966), the United States Supreme Court held that "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." However, "Miranda is not implicated" absent "both a custodial setting and official interrogation." Alston v. Redman, 34 F.3d 1237, 1244 (3rd Cir. 1994). Here, there was no official interrogation. Petitioner spontaneously responded to an off-handed comment by Officer Farley. Thus, Miranda was not implicated.

## IV.     RECOMMENDATION

Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections

/////

/////

/////

within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 17, 2021**                     /s/ *Sheila K. Oberto*
                                                                 UNITED STATES MAGISTRATE JUDGE